**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **BRENDA K. ADKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-00688** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Brenda K. Adkins (hereinafter referred to as "Claimant"), filed an application for SSI on July 15, 2005 (protective filing date), alleging disability as of January 26, 2001, due to degenerative back disease, bad nerves, migraines, and carpal tunnel syndrome. (Tr. at 64-69, 114.) The claim was denied initially and upon reconsideration. (Tr. at 28-30, 33-35.) On April 24, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 37.) The hearing was held on January 10, 2007, before the Honorable Robert S. Habermann. (Tr. at 349-71.) By decision dated January 18, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-25.) The ALJ's decision became the final decision of the Commissioner on August 28, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On October 30, 2007,

Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, January 26, 2001. (Tr. at 18, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from low back pain, bilateral carpal tunnel syndrome ("CTS"), obesity, and migraines, which were severe impairments. (Tr. at 18, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for work at the medium level of exertion, with the following limitations:

> Specifically, she can lift, carry, push, and/or pull up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally balance and crawl; and should avoid concentrated exposure to vibration and hazards. Due to hand numbness, she has limited ability for fingering, meaning once or twice a day for a couple of minutes, and her symptoms resolve after flexing her hands. She would need to rest during her regularly scheduled breaks (no more than one hour total), and would not miss work more than one day a month.

(Tr. at 22, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 24, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as food preparation, laundry worker, and packer, at the light level of exertion. (Tr. at 24-25, Finding No. 9.) On this basis, benefits were denied. (Tr. at 25, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

3

the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on May 20, 1971, and was 35 years old at the time of the administrative hearing, January 10, 2007. (Tr. at 24, 64, 352.) Claimant had a seventh grade, or limited, education in regular classes and was able to communicate in English. (Tr. at 24, 119, 353, 366.) In the past, Claimant worked as a construction laborer, doing concrete work. (Tr. at 115.)

## The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

## Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence

4

because the ALJ erred in (1) giving controlling weight to the opinions of the non-examining state agency medical consultants; (2) relying on the testimony of the VE, whose testimony was inconsistent with the <u>DOT</u>; (3) finding that Claimant's obesity did not result in any specific functional limitations; (4) dismissing the opinion of Claimant's treating physician, Dr. Morgan, without considering the factors set forth in SSR 96-6p; and (5) posing an improper hypothetical question to the VE. (Document No. 11 at 7-14.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 12 at 11-20.)

<u>Analysis</u>.

1. <u>Medical Source Opinions</u>.

In arguing that the ALJ improperly weighed the opinions of the various medical sources, Claimant first alleges that the ALJ erred in giving controlling weight to the opinions of the state agency physicians because they included no limitations in pushing and pulling, which included operation of hand or foot controls. (Document No. 11 at 7.) The EMG and NCS studies conducted by Dr. Derakhshan however, demonstrated mild to moderate distal sensory neuropathy of her legs, and Dr. Dumapit confirmed the diagnosis. (<u>Id.</u> at 8.) Furthermore, Dr. Koja, a neurosurgeon, diagnosed lumbar spondylosis with radiculopathy. (<u>Id.</u>) Regarding her hands and wrists, Claimant asserts that Dr. Dumapit found positive Tinel's signs bilaterally and that dorsiflexion on the right was limited to 50 degrees due to pain. (<u>Id.</u>)

Second, Claimant alleges that the ALJ erred in dismissing the opinion of her treating physician, Dr. Morgan, without considering the factors set forth in 20 C.F.R. §§ 404.1527(b) and 416.927(b) and SSR 96-6p. (Document No. 11 at 12.)

The Commissioner asserts that the ALJ properly afforded little weight to the opinions of Drs.

Koja, Derakhshan, and Dumapit, and greater weight to the findings of the state agency physicians, Drs. Lim and Gomez. (Document No. 12 at 11-12.) The Commissioner asserts that the state agency physicians' opinions were supported by the clinical and laboratory diagnostic techniques of record and were not inconsistent with the substantial evidence of record, including the relatively benign objective findings of Drs. Koja, Derakhshan, and Dumapit. (Id. at 12.) The Commissioner notes that Dr. Koja performed a one time examination, which revealed benign findings and only moderate degenerative changes. (Id. at 11.) Dr. Derakhshan's examination also revealed unremarkable results and only mild to moderate distal sensory neuropathy in Claimant's lower extremities. (Id.) Dr. Dumapit diagnosed chronic lower back pain secondary to degenerative disc disease and mild to moderate distal sensory neuropathy of Claimant's lower extremities. (Id.)

Regarding Dr. Morgan's opinion, the Commissioner asserts that contrary to Claimant's contention, the ALJ specifically considered Dr. Morgan's opinion and explained why he did not accept it. (Document No. 12 at 12.) First, the Commissioner notes that Dr. Morgan's opinion that Claimant could not work was an opinion on an issue reserved to the Commissioner, and therefore, not entitled to controlling weight. (Id. at 12-13.) Second, Dr. Morgan's opinion was not supported by the objective medical evidence of record. (Id. at 13.) Furthermore, Dr. Morgan's treatment notes did not support his opinion, but demonstrate that Claimant's pain was controlled reasonably with medication and that her activity level increased due to the birth of a grandchild. (Id.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the

"limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2));

rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1)

length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a

detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical evidence of record reveals that Claimant treated with Family Health Care Associates, Inc., from February 28, 2002, through May 3, 2006, for general health complaints and low back pain. (Tr. at 158-67, 308-10, 313-14.) An MRI of Claimant's lumbosacral spine on April 5, 2004, revealed mild degenerative changes at multiple levels with slight disc space narrowing and disc desiccation, as well as moderate central disc bulging at L4-5 with slight compression of the thecal sac and mild disc bulging at L3-4 and L5-S1, with no definite herniation. (Tr. at 161.)

On March 8, 2004, Claimant was examined by Dr. Abed A. Koja, M.D., a neurosurgeon, at the request of Dr. Muscari, for complaints of back and right hip pain. (Tr. at 156-57.) Claimant

10

reported that her pain had occurred off and on for three years, and primarily when she sat or walked. (Tr. at 156.) Neurological exam revealed moderate pain with flexion and extension of her back, positive straight leg raising at 60 degrees on the right with radicular pain to the hip, no weakness, and depressed bilateral ankle jerks. (Id.) MRI scans revealed moderate degenerative disease. (Id.) Dr. Koja diagnosed lumbar spondylosis with radiculopathy, recommended two epidural blocks, and specifically advised against any surgical interference. (Id.)

Claimant was referred by Dr. Michael Muscari, D.O., to Dr. I. Derakhshan, Neurologist, on May 20, 2004. (Tr. at 216-17.) Claimant complained of headache with features of migraines for six months and of a back ache for the past three years. (Tr. at 216.) She also reported nocturnal numbness of her upper extremities. (Id.) On examination, Dr. Derakhshan noted that Claimant's mental state, motor examination, sensation, coordination, and gait all were normal. (Id.) The only abnormal finding was weak grip bilaterally and questionable present ankle jerks. (Id.) Dr. Derakhshan therefore, opined that Claimant had migraines, and noted that her MRI revealed no disc herniation but mild scoliosis. (Id.) EMG and nerve conduction studies on May 20, 2004, by Dr. J. Derakhshan, M.D., demonstrated bilateral carpal tunnel syndrome ("CTS"), in the upper extremities, more severe on the right; and mild to moderate distal sensory neuropathy of the lower extremities. (Tr. at 165, 218.) On June 28, 2004, Claimant reported that her pain was "some better." (Tr. at 180.)

On April 25, 2005, Claimant was referred to Dr. Jean Michel Hyacinthe, M.D., for CTS surgery. (Tr. at 182-83.) Dr. Hyacinthe noted Claimant's complaints of swelling and weakness, and that she used to drop things involuntarily. (Tr. at 182.) Claimant reported that she was awakened regularly from sleep at night. (Id.) On physical exam, Dr. Hyacinthe observed mild atrophy over the intrinsic muscles of both hands, positive Tinel's sign, and weak results to pinch and grip tests. (Id.) Dr. Hyacinthe diagnosed bilateral CTS. (Id.) On June 30, 2005, Dr. Hyacinthe performed right

11

carpal tunnel release on Claimant's right hand. (Tr. at 201-02.) Claimant tolerated the surgery well and was discharged in good condition. (Tr. at 202.)

On October 18, 2005, Dr. Ruperto D. Dumapit, M.D., conducted a consultative evaluation of Claimant at the request of the West Virginia Disability Determination Service. (Tr. at 245-51.) Claimant complained of degenerative back disease with pain, which she rated at a level nine out of ten. (Tr. at 245.) She described the back pain as continuous, throbbing, and stabbing in nature, with radiation to her right hip and right leg, as well as numbness of her legs and feet. (Id.) Claimant reported that prolonged standing, sitting or walking, bending, lifting, and carrying aggravated her pain, while taking Percocet and Oxycodone, resting, and using a heating pad alleviated the pain. (Id.) Claimant also complained of migraine headaches, which began after she was hit in the head by her boyfriend. (Tr. at 246.) She described the headaches as throbbing and stabbing in nature that affected both sides of her head and were accompanied with nausea and sweating. (Id.) She stated that she experienced the headaches three times each week and rated them at a level eight out of ten. (Id.) Bright light, noise, and stress aggravated the headaches, and medication and resting in a dark, quiet room helped ease the pain. (Id.) Claimant further complained of carpal tunnel syndrome and she rated the pain at a level nine out of ten, as well as bad nerves, anxiety, and depression with a three year history. (Id.)

On examination, Dr. Dumapit observed that Claimant was alert and oriented, looked depressed with a flat affect, and made good eye contact. (Tr. at 248.) Claimant exhibited moderate tenderness on palpation of the lumbosacral spine, with 90 degrees flexion and extension with low back pain. (Id.) Straight leg raising in the supine position was 90 degrees bilaterally with low back pain and in the seated position was 90 degrees bilaterally without pain. (Id.) Claimant also exhibited mild tenderness on palpation in the posterior aspect of the right shoulder joint and entire left

12

shoulder joint. (Id.) Tinel's sign of both hands was positive. (Id.) Dorsiflexion of the right hand was restricted to 50 degrees with pain, but the range of left hand motion was normal. (Tr. at 248-49.) Range of bilateral hip motion was normal but there was low back pain while doing all maneuvers. (Tr. at 249.) Dr. Dumapit noted decreased sensation to pinprick in the right thigh and right foot, but that light touch sensation was normal. (Id.) Upper extremity strength was 4/5 and grip strength was 4/5 bilaterally. (Id.) Claimant was able to perform fine manipulative testing normally. (Id.) Lower extremity muscle strength was normal, with no muscle atrophy or wasting observed. (Id.)

Dr. Dumapit opined that Claimant had chronic back pain secondary to degenerative disease of the back, mild to moderate distal sensory neuropathy in the lower extremities, migraine headaches helped with medication, and bilateral carpal tunnel syndrome. (Tr. at 249.)

On October 31, 2005, Dr. Rogelio Lim, M.D., a state agency reviewing physician, completed a form Physical Residual Functional Capacity Assessment. (Tr. at 252-59.) Dr. Lim opined that Claimant's CTS and bulging disc of the lumbosacral spine restricted her to performing medium exertional level work with occasional climbing of ramps and stairs and frequent climbing of ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 253-54.) Despite normal neurological findings, Dr. Lim assessed that Claimant's ability to feel was limited due to sensory neuropathy. (Tr. at 255.) He also opined that Claimant should avoid concentrated exposure to vibration. (Tr. at 256.) On January 3, 2006, Karen Sarpolis, a reviewing consultant, confirmed Dr. Lim's physical RFC assessment but noted that Claimant's ability to feel should be clarified to "bilateral and frequently." (Tr. at 261-62.)

Claimant treated with Dr. David Morgan, D.O., a pain medicine specialist, from September 6, 2005, through December 1, 2006. (Tr. at 280-92, 311-12, 315-16, 317-19, 320-22, 323-31.) On September 6, 2005, Claimant reported that her medications helped her pain some, and rated her

lower back pain at a level eight to nine without medication and at a two to four with medication. (Tr. at 288.) On October 6, November 7, and December 5, 2005, and January 5, May 4, July 6, August 4 and 30, October 2, November 2, and December 1, 2006, Claimant reported that her medication helped her lower back pain. (Tr. at 280, 282, 284, 286, 311, 318, 321, 324, 326, 328, 330.) She consistently rated her pain within a range of eight to ten without medication and from two to six with medication. (Id.) She also reported that she slept three and one half to four and one half hours before waking due to pain. (Id.) On May 4, 2006, Claimant included her hand pain in her assessment. (Tr. at 311.) Dr. Morgan noted throughout this period of time that Claimant did not experience any falls, and that on July 6, 2006, Claimant had increased her activities with the birth of her grandchild. (Tr. at 319.)

On April 10, 2006, Dr. Rafael Gomez, M.D., another state agency reviewing physician, completed a form Physical Residual Functional Capacity Assessment. (Tr. at 300-10.) Dr. Gomez opined that Claimant's back pain and bilateral CTS restricted her to performing medium exertional level work with occasional balancing and crawling, and frequent climbing, stooping, kneeling, crouching, and crawling. (Tr. at 301-02.) Dr. Gomez assessed fingering or fine manipulation limitations due to bilateral CTS, but noted that her grip strength was 4/5, which was only a mild limitation. (Tr. at 303.) He further opined that Claimant should avoid concentrated exposure to vibration and hazards. (Tr. at 304.) In assessing Claimant's symptoms, Dr. Gomez stated:

> Patient is not fully credible. The physical findings are not consistent on exam. At times she has normal ROM's of the lumbar spine, and other times is decreased. She has a diagnosis of peripheral neuropathy, however the neurological exam is normal except for findings of mild CT syndrome. She is reduced to medium work.

(Tr. at 305.)

In a letter to Claimant's attorney, dated May 2, 2006, Dr. Morgan advised that Claimant was

14

not a candidate for return to work or vocational rehabilitation due to chronic low back pain. (Tr. at 316.) He opined that Claimant was unable to perform any activities requiring lifting, carrying, standing, walking, pushing, or pulling. (Id.) Dr. Morgan further opined that Claimant was unable to climb, balance, stoop, kneel, crouch, or crawl for sustained periods. (Id.) Dr. Morgan provided no explanation for his assessments. (Id.)

In his decision, the ALJ summarized the medical and opinion evidence of record, including the examination and treatment notes of Drs. Derakhshan and Dumapit. (Tr. at 18-20.) He also summarized the opinion evidence of record and concluded that the opinions of the state agency physicians, Drs. Lim and Gomez, were "well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence and, therefore, are entitled to substantial weight." (Tr. at 23.) As the ALJ noted, Drs. Lim and Gomez included in their assessments the specific clinical and laboratory records they considered, as well as Claimant's reported activities of daily living, symptoms, and pain. (Tr. at 257, 259, 307.) Dr. Lim specifically considered Dr. Dumapit's consultative evaluation and Dr. Derakhshan's EMG and NCS testing. (Tr. at 259.) Given the diagnoses of sensory neuropathy and the absence of abnormal neurological findings, Dr. Lim concluded that Claimant's ability to feel was limited, but did not preclude the performance of medium exertional level work with certain limitations. Likewise, Dr. Gomez specifically noted the EMG and NCS studies, Dr. Dumapit's consultative evaluation, and Dr. Morgan's treatment notes, in addition to Claimant's reported symptoms and activities of daily living. (Tr. at 307.) Dr. Gomez however, concluded that in view of Dr. Dumapit's finding of only mild limitation in grip strength, Claimant's ability to finger or perform fine manipulation was limited, but did not preclude the performance of medium exertional level with certain limitations. In view of the foregoing, the Court finds that the ALJ properly accorded substantial weight to the

15

opinions of the reviewing state agency physicians because there opinions were consistent with the substantial evidence of record.

The ALJ also summarized and considered Dr. Morgan's opinion that Claimant was unable to work. (Tr. at 23-24.) Nevertheless, the ALJ determined that Dr. Morgan's opinion was based solely on Claimant's "over-stated limitations rather than any clinical findings," and was not corroborated by the objective evidence of record. (Id.) As discussed above, Dr. Morgan's opinion was not accompanied with any explanation or references to clinical records. Dr. Morgan's treatment notes do not reference any limitations or abnormal findings and were accompanied by form assessments of pain as completed by Claimant. Thus, the ALJ's conclusion that Dr. Morgan's opinion was based on Claimant's subjective complaints is supported by substantial evidence. Furthermore, Dr. Morgan's opinion that Claimant was disabled and unable to work is not entitled significant weight as it is an opinion on an issue reserved to the Commissioner. See 20 C.F.R. § 416.927(e)(1) - (3). Accordingly, in view of the evidence of record, the Court finds that the ALJ's decision to accord little weight to the opinions of Dr. Morgan is supported by substantial evidence.

2. Vocational Expert's Testimony.

Claimant next alleges that the ALJ improperly relied on the VE's testimony because it was inconsistent with the Dictionary of Occupational Titles ("DOT") and was not responsive to hypothetical questions that were properly framed. (Document No. 11 at 11-12, 13-14.) Citing SSR 00-4p, Claimant first alleges that the "food preparation" job as identified by the VE is not found in the DOT. (Id. at 11.) Claimant further asserts:

> There are a great many jobs relating to food preparation at various skill levels and exertional levels. There are also numerous different packer jobs and laundry worker jobs. The ALJ made no effort to resolve these conflicts into specific jobs that the claimant could perform. In addition the ALJ failed to perform his duty of affirmative questioning.

16

(Id.) Claimant also alleges that the ALJ failed to frame a proper hypothetical question. (Document No. 11 at 13-14.)

Addressing Claimant's second argument first, the Commissioner asserts that the ALJ asked the VE to consider the medical evidence submitted by Claimant and admitted into the record, as well as additional limitations. (Document No. 12 at 17.) The Commissioner points out that Claimant's attorney acknowledged that she had reviewed all the evidence of record and that she had no objection to admission of any of the evidence. (Id.) Furthermore, Claimant's attorney declined to cross examine the VE. (Id. at 18.) Accordingly, the Commissioner contends that the ALJ included all of Claimant's properly established limitations in a properly framed hypothetical question to the VE, and that Claimant's argument is without merit.

Regarding Claimant's first argument, the Commissioner, citing Jones v. Sullivan, 364 F.3d 501, 505-06 (3d Cir. 2004), asserts that "[e]ven if a VE's testimony conflicts with the occupational information found in the DOT for several of the occupations cited by the VE, a claimant is still not disabled if the VE's testimony is consistent with the occupational information found in the DOT for one of the occupations cited by the VE." (Document No. 12 at 18.) Respecting the jobs identified by the VE, the Commissioner asserts that the VE's testimony did not conflict with the DOT because the DOT lists only the maximum requirements of an occupation. (Id. at 19-20.) Furthermore, the Commissioner asserts that the jobs identified by the VE were not an exhaustive list of occupations Claimant could perform. (Id. at 20.) Accordingly, the Commissioner contends that contrary to Claimant's argument, the VE's testimony was consistent with the occupational information found in the DOT and that the ALJ properly relied on the VE's testimony. (Id.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out

all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2007,  states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

At the administrative hearing, the ALJ first noted that an individual with Claimant's age, education, work experience, and with the limitations assessed by Dr. Morgan, obviously would be disabled. (Tr. at 367.) The ALJ then inquired of the Vocational Expert what jobs an individual with Claimant's age, education, work experience, and with the limitations assessed by Ms. Bell, including the need to rest during the day, but during the regularly scheduled breaks, and that no more than one day of work a month would be missed. (Id.) The VE responded that such an individual could perform the unskilled, light level jobs of a food prep worker, laundry worker, and packer. (Tr. at 368.) The ALJ then asked whether any of the jobs identified would be altered with the inclusion of

occasional numbness and swelling of the hands, which occurred two to three times during the workday but would subside after two minutes. (Id.) The VE responded that the occupational base would be modestly reduced. (Tr. at 369.) The ALJ then asked whether that response would be altered if the swelling and numbness occurred every hour and subsided after a three to five minute break. (Id.) The VE responded that such conditions would preclude any significant work activity. (Id.) Finally, the ALJ asked whether the VE's initial response would change if the individual had migraines occurring once or twice a week for two hours periods requiring the individual to lie down in a quiet room. (Id.) The VE responded that if the migraines occurred on such a regular basis then all jobs would be precluded by the limitation. (Id.) Claimant's attorney asked no questions of the VE. (Id.)

Claimant argues that the generally defined jobs of food prep worker, laundry worker, and packer are not contained within the DOT, and therefore, the ALJ improperly relied on the VE's testimony as it is inconsistent with the DOT. As stated above, at step five of the sequential analysis, the burden shifts to the Commissioner to establish that there are jobs in the local and national economies that the claimant is capable of performing. Here, the VE identified three general job categories which Claimant was capable of performing based on the ALJ's hypothetical questions. While the DOT may not contain a specifically defined job as "food preparation," Claimant does not dispute that the DOT contains specific jobs under this heading that Claimant was capable of performing. Furthermore, though there may be "numerous different packer jobs and laundry worker jobs," Claimant does not dispute that he is incapable of performing particular jobs meeting the description of packer or laundry worker. SSR 00-4P recognizes that the DOT only identifies the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Accordingly, the Court finds that there was

19

no inconsistency between the VE's testimony and the <u>DOT</u>, and that the ALJ properly relied on the VE's testimony that Claimant could perform other jobs.

Claimant also argues that the ALJ's hypothetical questions were improper because they referenced particular exhibits in lieu of articulating specific limitations. The Court finds that this argument is not persuasive. The ALJ referred to Dr. Morgan's and Ms. Bell's assessments, which specifically delineated various limitations. Neither Claimant nor counsel had any objection to the evidence of record. Furthermore, counsel elected not to question the VE at the administrative hearing. Accordingly, the Court finds that the ALJ's hypothetical questions, which incorporated by reference particular limitations, were proper and in accordance with the Regulations. Accordingly, the Court finds that the ALJ properly relied on the VE's testimony and that his decision at step five was supported by substantial evidence.

3. <u>Obesity</u>.

Finally, Claimant alleges that the ALJ failed to consider properly the effects of her obesity. (Document No. 11 at 11-12.) Specifically, Claimant contends that after concluding that Claimant's obesity was a severe impairment, the ALJ then concluded that her obesity did not affect her without having considered her obesity in combination with her other limitations. (<u>Id.</u> at 12.) The Commissioner asserts that the ALJ properly found that Claimant's obesity was a severe impairment at step two of the sequential analysis and then correctly found at step three, that her obesity, either individually or in combination with her other impairments, met or medically equaled a listed impairment. (Document No. 12 at 15-16.) At step four, the ALJ accommodated Claimant's obesity and other impairments in limiting her to medium work with postural and environmental restrictions. (<u>Id.</u> at 16.) The Commissioner asserts that the evidence did not support any additional obesity-related limitations that the ALJ failed to accommodate and Claimant has not identified any such

limitations. (<u>Id.</u>) Accordingly, Claimant's argument is without merit. (<u>Id.</u>)

Though Claimant argues that the ALJ failed to acknowledge limitations from Claimant's severe obesity, she fails to identify any limitations which the ALJ failed to consider. As noted above, the ALJ found that Claimant's obesity was a severe impairment. At step four, the ALJ properly determined that there was "nothing in the record that shows claimant's obesity has resulted in significant limitations that would preclude work activity." (Tr. at 23.) Nevertheless, in assessing Claimant's RFC, the ALJ limited Claimant to performing medium exertional level work with only occasional balancing and crawling and the requirement that she rest during her regularly scheduled breaks of no more than one hour in duration. (Tr. at 22.) In the absence of any specific limitations that the ALJ failed to consider, the Court finds that the ALJ's RFC assessment properly accommodated Claimant's obesity and that the ALJ's decision regarding Claimant's obesity  is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge

21